**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| EAGLE GEOPHYSICAL, INC., *et al*., | § | CASE NO. 09-33753 |
| | § | |
| Debtors. | § | (Chapter 11 – Jointly Administered) |

**DEBTORS' EXPEDITED MOTION TO APPROVE**
**(A) SALE PROCEDURE AND FORM OF NOTICE; AND (B) BID PROTECTIONS**

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON SEPTEMBER 23, 2009 AT 2:00 P.M. IN COURTROOM 403, 515 RUSK AVENUE, HOUSTON, TEXAS.   IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING.   UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT PRIOR TO THE HEARING DATE.   YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**EXPEDITED RELIEF IS REQUESTED.   ANY RESPONSE MUST BE FILED PRIOR TO THE ABOVE HEARING DATE.**

**To the Honorable Karen Brown,**
**United States Bankruptcy Judge:**

Eagle Geophysical Onshore, Inc. and Eagle Geophysical, Inc. (collectively, the "Debtors") files this Expedited Motion to Approve (a) Sale Procedure and Form of Notice; and (b) Bid Protections.

**<u>Nature of the Motion</u>**

1.     The Debtors have entered into a written agreement to sell 100% of the outstanding and issued equity interests of Eagle Geophysical Canada, Inc. ("ECI" and the equity interests the "ECI Equity Interest") to TGC Industries, Inc. ("TGC") for a cash payment of $4,000,000 and other non-cash consideration in excess of $2 million.   The specific terms of the sale will be set forth in the Debtors' contemplated motion to approve sale pursuant to 11 U.S.C.

§ 363(f).  The agreement between the Debtors and TGC is subject to higher and better offers.  In order to induce TGC to serve as the "stalking horse" bidder in the sale process, the Debtors have agreed to, and seek approval of certain bid protections and a sale procedure as set forth below.

## Expedited Consideration

2.      The Debtors request expedited consideration of this motion.  In order to achieve maximum value for the ECI Equity Interest, the Debtors anticipate having to fund ECI's ongoing operations in September and October due to the non-renewal of ECI's line of credit.  If a sale is not closed prior to November 1, 2009, the Debtors may not have sufficient resources to fund ECI's ongoing operations.  The Debtors believe that expedited consideration of the proposed bid protections and sale procedure is warranted under the circumstances.  No party is prejudiced as all interested purchasers may participate in the sale process.

## Background

3.      On May 31, 2009, the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these cases.

4.      One of the Debtors' most significant assets is the ownership of ECI.  ECI is not a debtor and operates a seismic business in Canada.  ECI's business is seasonal with substantially all of its business activities occurring during the winter months.  ECI has historically supported the seasonality of its operations with a line of credit from Royal Bank of Canada ("RBC").  RBC has recently declined to renew ECI's line of credit due to the Debtors' bankruptcy filing.

5.      Since the bankruptcy filing, the Debtors have explored the available options for selling ECI.  Data packages were distributed to approximately ten interested parties.  Significant discussions occurred with three interested purchasers.  After negotiation, the Debtors entered into a "term sheet" with TGC.  A copy of the term sheet is attached as **Exhibit 1**.  The term sheet is subject to higher and better offers.  Under the term sheet, the Debtors have agreed to seek approval of a sale procedure and certain bid protections as more fully set forth below.

**The Sale Procedure and Form of Notice**

6.      The Debtors seek approval of the following sale procedure:

**Notice of Sale Hearing**.  Within five (5) business days following the entry of an order approving this motion, the Debtors will serve by first class mail a notice containing the date of the final sale hearing to: (i) all potential purchasers previously identified or solicited by the Debtors during these bankruptcy cases; (ii) all other potentially interested parties identified by the Debtors (with input from the Committee) in their business judgment as a potential purchaser (collectively, with the parties identified in (i) above, the "Potential Purchasers"); (iii) the Office of the United States Trustee; (iv) counsel for TGC; (v) counsel for the Committee, (vi) all parties who are known to possess or assert a lien, claim, encumbrance or interest in or upon any equity interest in ECI; (vii) all applicable Canadian, U.S., state and local regulatory or taxing authorities, recording offices or any governmental entity which have a reasonably known interest in the relief requested in the Debtors' sale motion; and (viii) all parties on the most current master service list filed in the Debtors' bankruptcy cases.

**Qualified Bidders**.  Only Qualified Bidders may participate in the bidding process.  To become a Qualified Bidder, a potential bidder must on or before 5:00 p.m. Central Time on October 9, 2009 (i) execute and deliver to the Debtors a confidentiality agreement prepared by the Debtors, (ii) deposit with the Debtors the sum of $100,000 which deposit shall be nonrefundable unless such Qualified Bidder is not in default and is not the highest and best offer as determined by the Court; (iii) submit to the Debtors an unqualified and binding cash bid of at least $4,250,000 along with an executed written agreement substantially in the form of the stock purchase agreement between the Debtors and TGC as determined by the Debtors ("Qualified Bids"); and (iv) provide financial and other information to the Debtors and the Committee that allow the Debtors and the Committee to make a reasonable determination as to such bidder's ability to consummate a sale as contemplated herein.  TGC is and shall be deemed to be a Qualified Bidder and a party in interest for all purposes.  If no other Qualified Bidders are identified, the stock purchase agreement between the Debtors and TGC (the "TGC Stock

Purchase Agreement") shall be deemed the highest and best Qualified Bid.  No letter of intent or other written proposal submitted to the Debtors prior to the filing of this motion by any party other than TGC shall constitute or be considered a Qualified Bid for purposes of these sale procedures.  Although the Debtors shall be responsible for conducting the sale process, the Committee may fully participate in the process, and the Debtors shall consult with the Committee and take the Committee's position into account when: (i) determining whether a particular bidder is a Qualified Bidder; (ii) setting the bidding order prior to the Auction; (iii) conducting the auction; and (iv) selecting the highest and best Qualified Bid and the Back-Up Bid.

**Notice of Qualified Bidders**.  On or before 5:00 p.m. Central Time on October 10, 2009, the Debtors shall file a notice with the Court identifying all Qualified Bidders and attaching copies of all bids that were timely received.  All information received by the Debtors shall be shared with counsel for the Committee and counsel for TGC.  The Debtors shall serve a copy of the notice and the corresponding bids on all Qualified Bidders by (a) facsimile or electronic mail or (b) overnight delivery.

**Auction**.  If one or more timely Qualified Bids are received, an auction for the ECI Equity Interest will be conducted on October 13, 2009, commencing at 10:00 a.m. Central Time at the offices of Porter & Hedges, L.L.P., 1000 Main Street, 36th Floor, Houston, Texas 77002.  Only Qualified Bidders may participate in the auction.  All Qualified Bidders, or their authorized representatives, must be physically present or present via teleconference at the auction.  At the commencement of the auction, the Debtors shall announce the bidding order, which order shall be based upon (i) the amount of the Qualified Bidder's bid (from low to high); and (ii) if Qualified Bids are identical, the time the Qualified Bids were delivered to the Debtors (the first such received identical bid going first in the auction).  Minimum overbid increments at the auction shall be in the amount of not less than $100,000.

**Selection of the Highest and Best Bid**.  At the conclusion of the auction, the Debtors will announce the highest and best Qualified Bid and the next highest and best Qualified Bid (the "Back-Up Bid").  The Debtors will seek approval of the highest and best Qualified Bid at the final sale hearing.  If for any reason, the bidder submitting the highest and best Qualified Bid fails to timely consummate the purchase of the ECI Equity Interest, the Debtors may seek to consummate a sale based on the Back-Up Bid without further approval by the Court; provided, however, the party submitting the Back-Up Bid shall be under no obligation to consummate the purchase of the ECI Equity Interest.

**Return of Deposits**.  Within two business days after the conclusion of the auction described above, the Debtors shall return by wire transfer the full amount of any deposit submitted by the party(ies) who are not selected as submitting the highest and best Qualified Bid or the Back-Up Bid.  The deposit by the party who is

declared the Back-Up Bid will be returned by wire transfer within two business days after the closing of the sale to the party submitting the highest and best Qualified Bid; or if such party submitting the Back-Up Bid does not wish to close a sale, the deposit shall be returned within two business days of written notification to the Debtors that such party submitting the Back-Up Bid does not wish to close a sale.

7.      The foregoing Sale Procedure provides an appropriate framework to ensure that the Debtors' goal of obtaining the maximum value for the ECI Equity Interest is realized.  The proposed process is transparent and represents a fair balance of the competing issues present in these cases.

## Requested Break-Up Fees and Expense Reimbursement

8.      In connection with the TGC Agreement, the Debtors seek approval of the following bid protections:

- If the ECI Equity Interest or all or substantially all of the assets of ECI is sold to an entity other than TGC, or a joint venture arrangement or other reorganization transaction involving ECI is closed (each an "Alternative Transaction") and TGC is not otherwise in default under the term sheet or the TGC Stock Purchase Agreement, then the Debtors shall pay to TGC a break-up fee in the amount of $80,000 (the "Break-Up Fee").  The Break-Up Fee shall be payable solely from the proceeds of the Alternative Transaction.

- If the ECI Equity Interest is sold to an entity other than TGC, or another Alternative Transaction is closed and TGC is not otherwise in default under the term sheet or the TGC Stock Purchase Agreement, TGC shall be entitled to receive reimbursement of its actual, reasonable and necessary legal fees, expenses and costs up to $75,000 (the "Expense Reimbursement").  The Expense Reimbursement shall be payable solely from the proceeds of the Alternative Transaction.

9.      The Break-Up Fee and Expense Reimbursement are appropriate under the circumstances as a cost of ensuring that the estates achieve an acceptable value for the ECI Equity Interest while providing the Debtors with the opportunity to continue their marketing effort.    The amount of the Break-Up Fee and Expense Reimbursement are imminently reasonable for a transaction of the type and size contemplated.

10.     The determination of whether a break-up fee should be allowed is based on whether the fees and expenses are necessary to preserve the value of the estate.  *In re O'Brien Environmental Energy, Inc.*, 181 F.3d 527, 534 (3d Cir. 1999).  Courts have evaluated break-up fee arrangements under the business judgment rule standard.  *Cottle v. Storer Communications, Inc.*, 849 F.2d 570 (11th Cir. 1988); *CRTF Corp. v. Federated Dep't Stores*, 683 F.Supp. 422 (S.D.N.Y. 1988); *In re Integrated Res., Inc.*, 147 B.R. 650, 657 (S.D.N.Y. 1992), *appeal dismissed by* 3 F.3d 49 (2d Cir. 1993); *see also In re Twenver, Inc.*, 149 B.R. 954 (Bankr. D. Colo. 1992).  The considerations that underlie a debtor's business judgment to pay a break-up fee are relevant to the Court's determination of the request.  *Id*.

11.     It is well-established that "[a] bankruptcy court should uphold a break-up fee which was not tainted by self-dealing and was the product of arm's-length negotiations."  *In re Integrated Res., Inc.*, 147 B.R. at 658.  In the instant case, the proposed break-up fee and bid protections have been the product of good faith, arm's-length negotiations between the Debtors, the Committee and TGC.  The proposed fee is within the spectrum of break-up fees approved by bankruptcy courts in chapter 11 cases throughout the country.  *See e.g., In re VarTec Telecom, Inc.,* Case No. 04-81694 (SAF) (Bankr. N.D. Tex., November 23, 2004 and April 15, 2005) (court approved a break-up fee of approximately 3% with respect to two sales of assets); *In re Enron Corp.*, Case No. 01-16034 (AJG) (Bankr. S.D.N.Y., April 8, 2004) (court approved break-up fee equal to 5% of the purchase price); *In re TransCom USA Management Co., L.P.*, Case No. 01-35158 (KKB) (Bankr. S.D. Tex., February 12, 2002) (court approved a break up fee of more than 3.6% of the purchase price for the assets); *In re Ameriserve*, Case No. 00-0358 (PJW) (Bankr. D. Del., September 27, 2000) (court approved a break-up fee of 3.64% or $4,000,000 in connection with $110,000,000 sale); *In re Montgomery Ward Holding Corp., et al.*, Case No. 97-

1409 (PJW) (Bankr. D. Del., June 15, 1998) (court approved Break Up Fee of 2.7%, or $3,000,000, in connection with $110,000,000 sale of real estate assets); *see also Integrated Res.*, 147 B.R. at 648; *In re Crowthers McCall Pattern, Inc.*, 113 B.R. 877, 879 (Bankr. S.D.N.Y. 1990); *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989); *In re Twenever*, 149 B.R. at 957 (holding a topping fee of 1% to 2% is generally found to be reasonable in a majority of cases approving such fees).

Accordingly, the Debtors request that the Court (i) approve the motion as set forth above; and (ii) grant the Debtors other just relief.

**Dated: September 15, 2009.**

Respectfully submitted,

**Porter & Hedges, L.L.P.**

By: _____

David R. Jones
State Bar No. 00786001/S.D.Tex. No. 16082
Joshua W. Wolfshohl
State Bar No. 24038592
1000 Main, 36th Floor
Houston, Texas 77002
(713) 226-6000
(713) 226-6253 (Facsimile)
**Counsel for the Debtors**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was duly served by United States first class mail to all parties listed on the attached Service List and by electronic transmission to all registered ECF users appearing in the case on September 15, 2009.

_____
David R. Jones

This term sheet and proposal (the "Term Sheet") outlines a proposed transaction which Eagle Geophysical Inc. and Eagle Geophysical Onshore, Inc. (the "debtors") will support as a stalking-horse offer for the acquisition of 100% equity interest in Eagle Geophysical Canada, Inc., carrying on business as Eagle Canada, Inc. ("Eagle Canada"). This Term Sheet sets out the general terms and conditions of the transaction described herein (the "Transaction") and is not meant to be an exhaustive treatment of all the terms and conditions that will govern the Transaction. It is contemplated the complete terms and conditions governing the Transaction will be embodied in the Definitive Documents (defined below) to be negotiated and executed by the parties. This Term Sheet is being provided by the debtors simultaneously to two interested parties. The debtors will accept and support the first Term Sheet that is accepted and returned by the proposed purchaser (the "Purchaser").

It is expressly acknowledged and agreed that any Transaction is subject to review and approval by the United States Bankruptcy Court for the Southern District of Texas. It is further expressly acknowledged and agreed that this Term Sheet is subject to overbids as set forth herein.

1.   **Transaction**.  Pursuant to the Definitive Documents, the Purchaser" will purchase, and the debtors will sell, 100% of the issued and outstanding equity interests (including any preferred stock) in Eagle Canada (collectively, the "Equity Interests"). The parties shall cooperate with each other and use commercially reasonable efforts to structure the Transaction in a tax-efficient manner. The Transaction would be implemented pursuant to a sale under Bankruptcy Code section 363, free and clear of any and all liens, claims, interests, and encumbrances.

2.   **Purchase Price**.  The total purchase price for the Equity Interests would be US $4 million (the "Purchase Price"), payable by wire transfer of immediately available funds to Eagle Geophysical at the closing of the Transaction. The Purchaser shall deposit $100,000 with the debtors as a good-faith deposit within 48 hours of acceptance of this Term Sheet by the debtors, which acceptance shall occur only upon a fully executed copy (both Purchaser and debtors' signatures affixed) of this Term Sheet being delivered by the debtors to Purchasers. The deposit shall be refundable only if Purchaser is not in default and is not the ultimate buyer or the Court fails to timely enter the Bid Procedures Order or the Sale Order.

3.   **Continued Business Operations; Preservation of Assets**.  Following the execution of this Term Sheet, and up to and until the closing of the Transaction, Eagle Canada (a) shall (i) continue to conduct its business only in the normal and ordinary course; (ii) maintain its current bank accounts; and (iii) timely pay, discharge, or satisfy all claims, liabilities, or obligations arising in the ordinary course of business consistent with past practice, including all payments that become due under the Master Lease Agreement dated October 26, 2006 between Royal Bank of Canada and Eagle Canada, and all lease schedules thereto; and (b) shall not (i) sell or otherwise dispose of any of its property or assets existing as of the date of this Term Sheet other than in the ordinary course of business and for fair market value; (ii) transfer, assign, or terminate any leases, licenses, permits, contracts, or other agreements existing as of the date of this Term Sheet necessary for the conduct of Eagle Canada's business operations; (iii) except as provided in subclause (a)(iii) of this paragraph, make any payment to any consultant, employee, officer, or director outside of their ordinary and usual compensation for services provided; or (iv) enter into or modify any contract, agreement, commitment, or arrangement with respect to any of the foregoing. Notwithstanding the foregoing, it is expressly agreed and understood that Eagle Canada has a projected cash shortfall and that the debtors may advanced funds pursuant to a Bankruptcy Court approved loan. Such loan would be repaid from the collection of future receivables.

H-794570.3

EXHIBIT
1

4.    **Alternative Transaction**.   From and after execution of this Term Sheet, the debtors may solicit and receive proposals from any person or entity concerning a sale of the Equity Interests (or any portion thereof), a sale of all or substantially all of the assets of Eagle Canada, or a joint venture arrangement or other reorganization transaction involving Eagle Canada, to a party other than the Purchaser (an "Alternative Transaction").   If the debtors determine that any proposed Alternative Transaction is a higher and better offer (a "Superior Proposal"), the debtors will file such Superior Proposal with the United States Bankruptcy Court.   The debtors may consider such Superior Proposal and, if the debtors' board of directors determines that approval of the Superior Proposal is required for the board of directors to comply with its fiduciary duties or comply with any order of the Bankruptcy Court, then the board of directors may approve such Superior Proposal.   If other offers are received that the debtors believe may lead to a Superior Proposal, the debtors may request that the Court conduct an auction at the hearing on the Sale Motion.   Any proposal to be considered by the debtors as a Superior proposal must generally follow the form of this Term Sheet and be accompanied by a deposit as set forth in paragraph 2.

5.    **Bid Protections**.   If the debtors proceed with an Alternative Transaction and the Purchaser is not in default under the Term Sheet, then the debtors (a) shall reimburse the Purchaser for its reasonable and necessary legal fees, expenses, and costs up to the amount of $75,000 incurred in connection with the Transaction (the "Expense Reimbursement") and (b) shall pay the Purchaser a fee in an amount equal to 2% of the Purchase Price (the "Break-Up Fee") to induce the Purchaser to act as the stalking horse with respect to the Transaction.   The Expense Reimbursement and Break-Up Fee shall be paid to the Purchaser at the closing of an Alternative Transaction solely from the sales proceeds received from such Alternative Transaction.

6.    **Time is of the Essence; Deadlines**.   Time is of the essence with respect to the Transaction and all terms and conditions thereof.   Accordingly, the following deadlines shall govern the Transaction:

- By September 16, 2009, the parties shall negotiate and execute the material Definitive Documents forming the basis of the Transaction, including the stock purchase agreement.

- By September 21, 2009, the debtors shall file motions seeking (a) approval of the Transaction and authorizing the debtors to perform any and all actions necessary to consummate the Transaction (the "Sale Motion"), and (b) approving the Expense Reimbursement and Break-Up Fee (the "Bid Procedures Motion").

- Subject to the Bankruptcy Court's calendar and availability, the Bankruptcy Court shall enter an order approving the relief requested in the Bid Procedures Motion (the "Bid Procedures Order") by September 30, 2009.

- Subject to the Bankruptcy Court's calendar and availability, the Bankruptcy Court shall enter an order approving the relief requested in the Sale Motion (the "Sale Order") by October 14, 2009.

- The closing of the Transaction shall occur on or before three (3) business days after entry of the Sale Order on the docket in the Bankruptcy Case, provided that the Sale Order is enforceable immediately on entry notwithstanding any applicable provision of the Federal Rules of Bankruptcy Procedure.

The form and substance of the Bid Procedures Motion, the Sale Motion, the Bid Procedures Order and Sale Order shall be acceptable to the Purchaser.

7.   **Due Diligence**.  Until the termination of this Term Sheet or the closing of the Transaction if the parties enter into a definitive agreement, the debtors (a) shall permit the Purchaser and its officers, directors, employees, agents, advisors, and representatives (collectively, the "Representatives") reasonable access to inspect and evaluate Eagle Canada's business operations and (b) if requested by a Representative, shall disclose and make available to the Representatives books, records, agreements, contracts, plans, and other items related to Eagle Canada's property, assets, liabilities, business operations, financial condition, and other matters deemed relevant by the Purchaser.  Until the termination of this Term Sheet or the closing of the Transaction if the parties enter into a definitive agreement, the debtors will advise the Purchaser on a regular basis with respect to any adverse change in Eagle Canada's property, assets, contracts, business, operations, or financial condition.  All such information shall be subject to the confidentiality agreement previously executed by the Purchaser.

8.   **Definitive Documents**.  The Purchaser and the debtors will draft and engage in good-faith negotiations regarding any and all documents necessary to consummate the Transaction, including a stock purchase agreement, the Bid Procedures Order and the Sale Order (collectively, the "Definitive Documents").  The Sale Order shall include (i) a release in favor of the Purchaser of any and all direct and indirect claims held by the debtors against Eagle Canada, including alter ego or other derivative claims asserted in the Arrow Litigation, but not including any loan made by the debtors subsequent to the date of this Term Sheet; and (ii) a release by Eagle Canada of all claims against Eagle Geophysical.  The Definitive Documents shall be acceptable to all parties in both form and substance.

9.   **Closing Conditions**.  In addition to the other terms and conditions specified in this Term Sheet, the Purchaser's obligation to close the Transaction (including payment of the Purchase Price) is subject to the following closing conditions:

- Absence of any material adverse change to Eagle Canada or its business operations, financial condition, or prospects.

- A finding by the Bankruptcy Court that the Equity Interests constitute 100% of the ownership of Eagle Canada and that all options, warrants, or other contractual rights to acquire Equity Interests are cancelled.

- All claims against Eagle Canada in the litigation styled Arrow Geophysical Drilling, L.P., et al. v. Eagle Geophysical Onshore, Inc., et al. (Cause No. 09-06281), pending in the District Court of Dallas County, Texas, 191st Judicial District (the "Arrow Litigation"), shall have been dismissed with prejudice.  Nothing herein will affect the intercompany claims between the debtors or serve as an allocation of sales proceeds between the debtors.

- Receipt of any necessary governmental consents or clearances and any contractual consents.

- Such other customary closing conditions to be included in the Definitive Documents.

10.   **Expenses.**  Except as provided in paragraph 5 above, the parties hereto shall bear their respective costs and expenses incurred in connection with the contemplated Transaction, including all fees and expenses of their respective agents, representatives, counsel, and accountants.

11.    **Brokers.**  Each party represents and warrants to the other party that no investment banker, broker, agent, or finder has been engaged by it or on its behalf in connection with the Transaction or, to its knowledge, is in any way connected with the Transaction or this Term Sheet.  If any party engages a person or entity to act in a manner that would give rise to any claim for any investment banking fee, broker's fee, finder's fee, or similar compensation, then such party shall be solely responsible for such fee or other compensation and shall indemnify the other party against such fee or compensation.

12.    **Termination.**  The obligations of each party hereunder may be terminated by written notice to the other party if the Bankruptcy Court does not enter the Bid Protection Order or the Sale Order by the deadline specified in paragraph 6 above.  On such termination, the parties shall be relieved of their respective obligations under this Term Sheet; provided, however, that the provisions of paragraphs 10, and 11 herein shall continue to be operative and binding on the parties.

13.    **Multiple Counterparts; Assignment.**  This Term Sheet may be executed by the parties hereto in one or more counterparts, each of which shall be deemed an original and each of which shall constitute one and the same instrument.  The rights, benefits, duties, and obligations under this Term Sheet are not assignable by either party.

14.    **Entire Agreement; Modification.**  This Term Sheet and the Definitive Documents to be negotiated by the parties contain the entire agreement between the parties relating to the Transaction. Any oral representations or modifications concerning this Term Sheet or the Definitive Documents shall be of no force and effect.  This Term Sheet may be modified, amended, or supplemented only by a written instrument executed by all parties hereto.

15.    **Binding Agreement.**  This Term Sheet is a legally binding and enforceable agreement regarding the transaction contemplated herein.  The Transaction will be consummated, however, only if mutually acceptable Definitive Documents are executed by the parties.

16.    **Governing Law.**  THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS WITHOUT GIVING EFFECT TO THE CONFLICT OF LAWS PROVISIONS OF THE STATE OF TEXAS.

If this Term Sheet is acceptable, please so indicate by signing in the appropriate space below and returning this Term Sheet to the debtors on or before September 11, 2009 at 5:00 p.m. prevailing central time.  If this Term Sheet is not accepted and returned to the debtors by such deadline or if the Term Sheet is executed and returned to the debtors by another party prior to the Purchaser's execution and delivery, this Term Sheet shall automatically terminate and be of no further force and effect.

**ACCEPTED:**

Purchaser:

By: _Wayne Whitworth_

Title: _President / CEO_

Date/Time: _9-9-09 – 3:30 PM CST_

**ACCEPTED:**

Debtors:

By: _Sheldon Smith_

Title: _CRO_

Date/Time: _9/10/09 – 5:00 pM CST_

## SERVICE LIST

Eagle Geophysical, Inc.
Eagle Geophysical Onshore, Inc.
c/o H. Malcolm Lovett, Jr.
Strategic Capital Corporation
520 Post Oak Blvd., Suite 320
Houston, TX 77027

Christine March
Office of the United States Trustee
515 Rusk, Suite 3516
Houston, TX 77002

**U/S Creditors Committee**
Matt Okin
Okin Adams & Kilmer, LLP
1113 Vine St., Suite 201
Houston, TX 77002

Arrow Geophysical Drilling, L.P.
c/o David W. Elrod
500 N. Akard, Suite 3000
Dallas, TX 75201

Mitcham Industries, Inc.
P.O. Box 1175
Huntsville, TX 77342-1175

Mitcham Industries, Inc.
c/o Munsch Hardt Kopf & Harr
500 N. Akard, Suite 3800
Dallas, TX 75201

ARAM Systems Corporation
c/o David Roland
2105 City West Blvd., Suite 400
Houston, TX 77042-2839

Credit Union Services
8131 LBJ Freeway, Suite 400
Dallas, TX 75251

Curry Auto Leasing
14850 Montfort Drive, Suite 295
Dallas, TX 75254

Marquette Equipment Finance
6975 Union Park Center, Suite 200
Midvale, UT 84047

SunTrust Equipment Finance & Leasing
300 East Joppa Road, 7th Floor
Towson, MD 21286

TFG-Texas, L.P.
6925 Union Park Center
Midvale, UT 84047

Town & Country Office Towers, LP
c/o Reliance Property Resource
10565 Katy Freeway, Suite 301
Houston, TX 77024

Wells Fargo Bank
1500 Waugh Drive, 1st Floor
Houston, TX 77019

**Eagle Geophysical, Inc.**
**20 Largest Unsecured Creditors**
A. John Knapp, Jr.
1811 Bering Drive, Suite 200
Houston, TX 77057

A. John Knapp, Jr. Trust
1811 Bering Drive, Suite 200
Houston, TX 77057

Allen Schubert
333 East Main, Suite 400
Louisville, KY 40202

Allstate Permit Services, LP
c/o Elrod, PLLC
500 North Akard, Suite 3000
Dallas, TX 75201

American Express
P.O. Box 53800
Phoenix, AZ 85072

1613931v1

Andover Group
919 Milam
Houston, TX 77002

Arrow Geophysical Drilling, L.P.
c/o Elrod, PLLC
500 North Akard, Suite 3000
Dallas, TX 75201

Douglas Thompson
250 Lloyds Lane
Vero Beach, FL 32963

Ronald Wood
Eagle Canada, Inc.
396 11th Avenue SW, Suite 110
Calgary, AB CN T2R 0C5

Eagle Equipment Leasing
300 Jackson Hill
Houston, TX 77007

Eagle Geophysical Offshore
Fixed Income Trust
908 Town & Country Blvd., Suite 400
Houston, TX 77027

Heli-Dunn, Inc.
P.O. Box 276
Phoenix, OR 97535

John Kornitzer
5420 West 61st Place
Mission, KS 66205

Julie Edwards
3826 Coleridge Street
Houston, TX 77005

Kent Teague
1050 Parkdale Drive
McKinney, TX 75069

Paris Residential 1
300 Jackson Hill Street
Houston, TX 77007

Realtime Geophysical Surveys, L.P.
c/o Elrod, PLLC
500 North Akard, Suite 3000
Dallas, TX 75201

Robert Hixon
P.O. Box 1388
Houston, TX 77251

Steward Cable
P.O. Box 11270
Midland, TX 79702

UHY, LLP
12 Greenway Plaza, Suite 1202
Houston, TX 77046

**Eagle Geophysical Onshore, Inc.**
**20 Largest Unsecured Creditors**
Allstate Permit Services, LP
c/o Elrod, PLLC
500 North Akard, Suite 3000
Dallas, TX 75201

ARAM Systems, Ltd.
7236 10th Street, NE
Calgary AB CN T2E 8X3

Arrow Geophysical Drilling, L.P.
c/o Elrod, PLLC
500 North Akard, Suite 3000
Dallas, TX 75201

Boone Exploration, Inc.
P.O. Box 8660
Huntsville, TX 77340

Buckley Powder Company
P.O. Box 17532
Denver, CO 80217

Dauterive Contractors, Inc.
4700 E. Old Jeanerette Rd.
New Iberia, LA 70563

Eagle Canada, Inc.
396 11th Avenue SW, Suite 110
Calgary, AB CN T2R 0C5

Energy Operations Nevada
5777 Central Avenue
Boulder, CO 80301

Geophysical Land Services
P.O. Box 1078
Livingston, TX 77351

Geospace Technologies, LP
P.O. Box 3049
Houston, TX 77253

HMS Enterprises, Inc.
9203 Highway 6 S
Suite 124-406
Houston, TX 77083

Mitcham Industries, Inc.
P.O. Box 1175
Huntsville, TX 77342

O'Brien Resources, LLC
P.O. Box 6149
Shreveport, LA 71136-6149

Omni Energy Seismic Services, LLC
2383 Momentum Place
Chicago, IL 60689

Omni Labor Corporation
2385 Momentum Place
Chicago, IL 60689

PM Heli-Ops, Inc.
8371 Gold Ray Road
Central Point, OR 97502

Realtime Geophysical Surveys, L.P.
c/o Elrod, PLLC
500 North Akard, Suite 3000
Dallas, TX 75201

Texas Seismic Rental
12300 Parc Crest Drive
Stafford, TX 77477

Town & Country Office Towers, LP
c/o Reliance Property Resource
10565 Katy Freeway, Suite 301
Houston, TX 77024

Urban Seismic Specialists, Inc.
P. O. Box 1266
New Ulm, TX 78950

**Parties Requesting Notice**
Geophysical Land Services, LLC
Boone Exploration, Inc.
c/o Charles J. Cain
Cain & Skarnulis, LLP
400 W. 15th Street, Suite 1430
Austin, TX 78701

John P. Dillman
Linebarger Goggan Blair & Sampson
P.O. Box 3064
Houston, TX 77253-3064

David W. Elrod/Worthy Walker
ELROD, PLLC
500 N. Akard Street, Suite 3000
Dallas, TX 75201

Steven A. Leyh
Leyh & Payne, LLP
9545 Katy Freeway, Suite 200
Houston, TX 77024

Randall A. Rios
Munsch Hardt Kopf & Harr, PC
700 Louisiana, 46th Floor
Houston, TX 77002

Yolanda M. Humphrey
Perdue, Brandon, Fielder, Collins & Mott
1235 N. Loop W., Suite 600
Houston, TX 77008

Missouri Dept. of Revenue-Bankruptcy Unit
Attn: Richard M. Maseles
P.O. Box 475
Jefferson City, MO 65105-0475

Theodore M. Haik, Jr.
Haik, Minvielle & Grubbs, LLP
1017 E. Dale Street
P.O. Box 11040
New Iberia, LA 70562-1040

Harold Aubry Dauterive
4700 E. Old Jeanerette Road
New Iberia, LA 70563

David L. Roland
ION Geophysical Corporation
2105 CityWest Blvd, Suite 400
Houston, TX 77042-2839

Robert H. Singleton, Jr.
Singleton Cooksey, LLP
6363 Woodway, Suite 610
Houston, TX 77057

Paul Jordan
Sneed, Vine & Perry
P.O. Box 856
Georgetown, TX 78627

Alvin L. Thomas
Global Geophysical Services, Inc.
3535 Briarpark Drive, Suite 200
Houston, TX 77042

Geoffrey B. Treece
Quattlebaum, Grooms, Tull & Burrow
111 Center Street, Suite 1900
Little Rock, AR 72201

Stephen C. Tingey
Ray Quinney & Nebeker, P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, UT 84145-0385

IKON Office Solutions
Recovery & Bankruptcy Group
3920 Arkwright Road, Suite 400
Macon, GA 31210

Nick Limperos
Grub & Ellis
1330 Post Oak Blvd., Suite 1400
Houston, Texas 77056

Sam Sloan
Third Coast Enterprises
P.O. Box 1416
Hempstead, Texas 77445

Doug H. Edwards
Haynes and Boone, LLP
One Houston Center
1221 McKinney Street, Suite 2100
Houston, TX 77010

Bill Hixon
300 Jackson Hill
P.O. Box 130410
Houston, Texas 77219

Grant DeFehr
Everest Operations Management
14313 N. May, Suite 100
Oklahoma City, OK 73134

Mark Zand
Wexford Capital, LP
411 W. Putnam Ave.
Greenwich CT 06830

Wayne A. Whitener
TGC Industries, Inc.
101 East Park Blvd.
Plano, Texas 75074